# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2026

Lyle W. Cayce
Clerk

_____

No. 24-20551

_____

Fredric A. Guenther; Walton Fujimoto; Les Owen,

*Plaintiffs—Appellees*,

*versus*

BP Retirement Accumulation Plan; BP Corporation North America, Incorporated,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-995

_____

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Per Curiam:[*]

Former and current BP[1] employees sued various BP subsidiaries, alleging violations of fiduciary duty under the Employee Retirement Income

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] There are technically three BP parties related to this case: BP Corporation of North America, BP America, and the BP Retirement Accumulation Plan. Because we are remanding this case for further fact finding, we will refer to all three for the purposes of this opinion as "BP." We do not reach any question regarding the relevance to this case of the differences between these entities.

No. 24-20551

Security Act of 1974 (ERISA).  BP disputes that the employees have Article III standing.  Because the district court did not make necessary findings on causation, we vacate the judgment below and remand for further proceedings consistent with this opinion.

## I.

Frederic Guenther, Walton Fujimoto, and Les Owens were employees of BP.  On January 1, 1989, BP replaced its "America, Inc. Retirement Plan" (ARP) with the "Retirement Accumulation Plan" (RAP), which calculated benefits using a different formula than the ARP.  Under the new formula, some employees would receive more than before, while others would receive less.

In the summer of 1989, BP sent several different communications to employees explaining the new retirement plan.  Although the content of these communications is disputed, Guenther alleges that they misled employees into thinking that their payments under the RAP would be at least as much as under the ARP.  It is undisputed that, for some, the payments under the newer RAP are lower than they would have been under the ARP.

In 2011, employees began complaining that their retirement benefits were not what they expected.  After several investigations, BP refused to increase the retirement benefits.

In 2016, this suit was filed under ERISA § 502(a)(3), which permits private parties to sue for violations of fiduciary duty by a plan sponsor.  *See Varity Corp. v. Howe*, 516 U.S. 489, 509–15 (1996).  Relevant to our decision, the employees claim that BP, through its 1989 communications about the RAP, "breached their fiduciary duties under ERISA § 404(a) by intentionally, recklessly or negligently representing" that employees would receive at least the same benefits under the RAP as the ARP.  The employees

2

No. 24-20551

also allege that BP breached these fiduciary duties by failing to make disclosures in accordance with ERISA §§ 102 and 204(h).

Below, the district court denied both a motion for summary judgment and a motion to dismiss for lack of standing. After a bench trial, the district court produced findings of fact and conclusions of law, ruling in favor of the employees. BP now reasserts their argument that the employees lack standing to bring this case, along with several other objections.

## II.

"[Q]uestions of law relating to constitutional standing are reviewed de novo." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 441 (5th Cir. 2025) (quotations omitted).

To show Article III standing, a plaintiff must demonstrate "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). "[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021).

When determining standing, courts "should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 421 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). "[E]ven though Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to

transform something that is not remotely harmful into something that is." *Id*. at 426 (quotations omitted).

All agree that the asserted "illegal conduct" is BP's alleged breach of fiduciary duty through its 1989 communications about the RAP. No one disputes that there is an injury in this case. But there is disagreement about what exactly that injury is. Below, the district court found that the employees suffered from "a mistaken understanding" about retirement benefits. BP disputes this characterization of the employees' injury, arguing that the real injury here is the difference between the benefits which the employees would have received under the ARP, and those actually received under the RAP. The employees, for their part, attempt to recast their injury as a broken contractual promise of benefits by BP.

The only credible theory of an injury in this case is the decreased benefits under the new retirement plan. A broken contractual promise is not an injury—it is a "violation of federal law." The injury is the diminution of the employees' retirement funds caused by the broken promise.

A "mistaken understanding" about retirement benefits is not enough to justify Article III standing. There must be "downstream consequences" from this lack of information. *See TransUnion LLC*, 594 U.S. at 442. *See also id.* ("An asserted informational injury that causes no adverse effects cannot satisfy Article III."). The district court and the employees point to none.[2]

_____

[2] No one disputes that alleged downstream consequences were not proven at trial. *See TransUnion LLC*, 594 U.S. at 431 ("Therefore, in a case like this that proceeds to trial, the specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence adduced at trial." (quotations omitted)).

The employees argue that they do not need to prove downstream consequences because the Supreme Court has held that it is not necessary to prove detrimental reliance on employer communications for courts to exercise equitable powers under ERISA. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 443–45 (2011). However, that case dealt with the

No. 24-20551

### III.

Having identified the relevant injury under Article III, we turn to traceability. "[T]he line of causation between the illegal conduct and injury . . . must not be too speculative or too attenuated." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

BP argues that the line of causation between the alleged breach of fiduciary duty and the decrease in retirement funds is too attenuated. We note that the district court did not identify the correct injury in this case, so it's not surprising that it neglected to make the relevant findings with respect to traceability—namely, whether the diminution of funds was caused by the alleged breach of fiduciary duty.

Accordingly, we vacate the judgment below and remand this case for the district court to evaluate Article III standing consistent with this opinion.

---

prerequisite showing for exercising certain equitable powers under the statute and so did not consider the contours of Article III standing. As the Supreme Court recently noted, "mere risk of future harm, standing alone," is insufficient for Article III standing. *See TransUnion LLC*, 594 U.S. at 436.

No. 24-20551

Stephen A. Higginson, *Circuit Judge*, separately concurring:

As the majority holds, the district court failed to issue findings as to traceability and Article III standing as a whole. Hence, I concur in our remand for the district court to provide full jurisdictional fact-finding.

I write separately to clarify that on remand, this case is not simply one of a mistaken understanding because the Plaintiffs did allege downstream consequences. The majority observes that Plaintiffs might be able to proceed if they are only injured by a "mistaken understanding"; there must be "downstream consequences." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). Plaintiffs' complaint alleged at least four tangible consequences and harm from BP's unlawful conduct. First, Plaintiffs alleged that "Defendants' acts induced them to not seek suitable alternative employment to receive better retirement benefits even though they had marketable skills in a market for which there was a demand." They contended that BP's conduct "prevented them from making an informed decision to continue employment with BP and decide on alternative retirement savings to address any shortfall." They asserted that "Defendants' omissions and misrepresentations caused Plaintiffs and the class members to believe their retirement benefits were substantially more than they actually were, thus preventing them from altering their retirement strategies and adversely affecting their retirement choices, planning and understanding." And they claimed that the misrepresentations "undermined the likelihood of any employee discussions of unionization to oppose the plan amendment." These allegations show direct downstream consequences and harm from BP's breach of fiduciary duties under ERISA.

With these allegations, the district court found that Plaintiffs had demonstrated they "were harmed by working under a mistaken understanding caused by a lack of proper information" regarding their

6

benefits. This finding of actual harm is different from any characterization that Plaintiffs alleged that they suffered from a "mistaken understanding" alone. "Working under" a mistaken understanding means that employees acted in reliance on BP's misrepresentation that the RAP plan would provide similar or better benefits to employees than they had under their previous ARP plan. The district court further found that "there was class-wide reliance on BP's representations," and that the "mistaken belief by participants worked to [their] *actual detriment*." Namely, Plaintiffs were unable to make professional and financial decisions based on what they would actually receive in retirement, or, in the alternative, to bargain for better benefits. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 527 (2d Cir. 2014) ("By hiding the truth about the plan, CIGNA prevented *all* of its employees from becoming disaffected, spreading knowledge regarding the plan to others who stood to lose more from the benefit conversion, and from planning for their retirement."); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 451 (2011) (SCALIA, J., concurring) (recognizing the "'actual harm' suffered by an employee" stems "from reliance" on an employer's false financial disclosures or "the lost opportunity to contest or react to the switch"). BP's failure to execute its fiduciary duties left its employees disempowered to plan for their long-term financial health, often as concrete and devastating an injury as workers can suffer.

The majority's focus on the decreased benefits under the new retirement plan also is discussion that could overlook the broader harms of ERISA violations recognized by the Supreme Court in *CIGNA Corp. v. Amara*.[1] 563 U.S. at 425. There, the Supreme Court evaluated a nearly

---

[1] The majority discusses *Amara* in a footnote, noting that it dealt with the prerequisite showing for courts to exercise equitable powers under ERISA, and did not expressly discuss Article III standing. *Amara*, 563 U.S. at 425. Nevertheless, *Amara*'s discussion of the "actual harm" of ERISA violations to employees vitally informs our

identical plan conversion: CIGNA changed from a defined-benefit plan to an account balance plan. *Id.* at 426–27. That conversion "shifted the risk of a fall in interest rates from CIGNA to its employees," *id.* at 430; likewise, here, the district court found that BP's new "cash balance plan shifted the risk of a drop of interest rates and other investment risks from BP to its employees." The Court in *Amara* noted that the harm was not merely the fact that employees were left "with less money at retirement" due to "falling interest." *Id.* Instead, it considered the shift of risk itself to be a harm. Because "most individuals are risk-averse," the Court recognized that "most of CIGNA's employees would have preferred that CIGNA, rather than they, bear these risks." *Id.* As in *Amara*, BP's failure to disclose the shift in risk left its employees more exposed to market volatility but unable to take precautionary measures in response.

Accordingly, the Plaintiffs' allegations of harm appear sufficient to establish Article III injury. "Information-related circumstances, violations, and injuries" are "various in nature," and "[i]t is not difficult to imagine how the failure to provide proper summary information, in violation of the statute, injured employees[.]" *Id.* at 444–45; *see also Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 940 (5th Cir. 2022) (concurring) (noting there is a "low evidentiary burden" for plaintiffs to show Article III injury from a "downstream consequence" of a failure to disclose information in contravention of a statute). Given the professional and financial consequences of working under an incorrect assumption of their retirement plan's risk, Plaintiffs would meet the bar here.

_____

understanding of a plan participant's injury-in-fact. *See Peters v. Aetna Inc.*, 2 F.4th 199, 220 (4th Cir. 2021) (relying on *Amara* to find plan participant had suffered a cognizable injury to establish Article III standing).

Crucially, however, our remand requires the district court to assess traceability in the first instance. Defendants repeatedly argued that Plaintiffs lacked Article III standing, asserting that they cannot trace their injury to BP's breach of fiduciary duty. But the district court failed to directly address the question of whether Plaintiffs had standing. Vacatur and remand is therefore necessary for the district court to first determine the issue.

To be clear, I therefore endorse our limited evidentiary remand for the district court to determine the extent of the downstream consequences of Plaintiffs' reliance on BP's financial misrepresentations, and, if necessary, reopen jurisdictional discovery. *See Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357 (5th Cir. 2020) (remanding for jurisdictional factfinding for Article III standing). Plaintiffs should have ample opportunity to "assembl[e] evidence of downstream consequences." *Scott*, 49 F.4th at 940. I write separately simply to confirm that the *type* of consequences alleged constitutes an Article III injury.

For these reasons, I separately concur.